# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | | |
|---|---|---|
| _____ ) | CHAPTER 7 | |
| IN RE: ) | | |
| ) | | |
| WALNUT HILL, INC. ) | CASE NO.:  16-20960 (JJT) | |
| ) | | |
| Debtor. ) | | |
| ) | | |
| _____ ) | | |
| BONNIE C. MANGAN, Chapter 7 Trustee for ) | | |
| WALNUT HILL INC., ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Adv. Pro. No. _____ | |
| ) | | |
| CITY OF NEW BRITAIN, GRAND STREET ) | | |
| REAL ESTATE, LLC, GRAND STREET PL, ) | | |
| LLC, TL MANAGEMENT, LLC, ELIEZER ) | | |
| SCHEINER, and TEDDY LICHTSCHEIN ) | | |
| Defendants. | | |

## **COMPLAINT**

Bonnie Mangan, Chapter 7 Trustee (the "Trustee") of Walnut Hill Inc. ("Walnut Hill" or the "Debtor"), in support of this complaint (the "Complaint"), hereby alleges:

## **PRELIMINARY STATEMENT**

The Trustee has commenced this adversary proceeding in order to avoid a series of fraudulent transfers and to recover damages related thereto.  As further alleged herein, the Debtor fraudulently transferred **$242,223.40** to the City of New Britain to pay real estate taxes related to property that the Debtor never owned or no longer owned, and for which the Debtor had no legal or contractual obligation to pay taxes.  The Debtor was caused to make these payments for the

benefit of Eliezer Scheiner, Teddy Lichtschein, Grand Street Real Estate, LLC, and Grand Street PL, LLC.

## **JURISDICTION, VENUE AND NATURE OF THIS PROCEEDING**

1.     On June 14, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

2.     On or about June 14, 2016, the Trustee was appointed Chapter 7 Trustee of the Debtor.

3.     This Complaint initiates an adversary proceeding pursuant to §§ 105, 502(d), 510, 544, 546, 548, 550 and 551 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Fed. R. Bankr. P. 7001(1).  The Complaint seeks: (1) to avoid and recover intentional and constructive fraudulent transfers of the Debtor's property made to or for the benefit of the Defendants; (2) to disallow any claims of the Defendants against the Debtor and the estate; (3) to subordinate any allowed claims of the Defendants against the Debtor and the estate to the claims of all other creditors of the estate; (4) an injunction against the Defendants prohibiting them from further transferring or disposing of any of the property transferred; and (5) other legal and equitable relief.

4.     This Court has jurisdiction, under 28 U.S.C. §§ 157 and 1334(b), of the subject matter of this proceeding because the claims asserted herein arise under Chapter 7 of the Bankruptcy Code and are related to a case pending under the Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut, Hartford Division (the "Bankruptcy Court").

5.     This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (E), (H), and (O).

6.      Pursuant to 28 U.S.C. §§ 1391 and 1409(a), venue of this adversary proceeding in the Bankruptcy Court is proper because the Debtor's case is pending in this district and division.

## PARTIES

7.      The Trustee is the duly appointed Chapter 7 Trustee in this Chapter 7 case.

8.      Defendant City of New Britain (the "City of New Britain") is a public body corporate and a politic and subdivision of the State of Connecticut.

9.      Defendant Grand Street Real Estate, LLC ("Grand Street Real Estate") is a Connecticut limited liability company with a place of business in Brooklyn, NY.

10.     Defendant Grand Street PL, LLC ("Grand St. PL") is a Connecticut limited liability company with a place of business in Brooklyn, NY.

11.     Defendant, TL Management, LLC ("TL Management"), is a Florida limited liability company with a place of business in Brooklyn, N.Y.

12.     Defendant Eliezer Scheiner ("Scheiner") is an individual residing in Suffern, N.Y., with a place of business in Brooklyn, NY.

13.     Defendant Teddy Lichtschein ("Lichtschein") is an individual residing in Spring Valley, N.Y., with a place of business in Brooklyn, NY.

14.     Upon information and belief, Lichtschein and Scheiner are the owners of, and the individuals who control the activities of, TL Management, Grand Street Nursing, Grand Street Real Estate and Grand Street PL.

15.     The City of New Britain, Grand Street Real Estate, Grand Street PL, TL Management, Scheiner, and Lichtschein are collectively referred to as the "Defendants."

3

## FACTS COMMON TO ALL COUNTS

### I.    Background Information

16.    The Debtor was a corporation that operated a skilled nursing/chronic and convalescent nursing home facility located at premises known as 55 and 48 Grand Street, New Britain, Connecticut (the "Premises").

17.    Walnut Hill Real Estate LLC ("WH Real Estate") owned the Premises.

18.    The Debtor owned a parking lot adjacent to the facility at Premises known as 39 and 45-47 Grand Street, New Britain, Connecticut (the "Parking Lot").

19.    For years, the Debtor was owned by Walnut Hill Holdings, LLC ("WH Holdings") and was operated by Dr. Donald Griggs ("Dr. Griggs").

20.    Dr. Griggs was adjudged to be incompetent on November 5, 2014, and his daughter, Annemarie Griggs ("Ms. Griggs"), was appointed as conservator.  Ms. Griggs took control of the Debtor around this time.

21.    On or about February 13, 2015, Grand Street Real Estate was registered as a limited liability company in Connecticut.

22.    On or about February 13, 2015, Grand Street PL was registered as a limited liability company in Connecticut.

23.    By virtue of an *Operations Transfer and Surrender Agreement* (the "OTA"), dated February 2015, executed by the Debtor, as transferor, and Grand Street Nursing, LLC ("Grand Street Nursing") as transferee, the parties entered into an agreement pursuant to which Grand Street Nursing would acquire the Debtor's operations and virtually all of its assets as of an anticipated closing date defined in the OTA.

24.     Grand Street Nursing is owned and controlled by Messrs. Scheiner and Lichtschein, and is an affiliate of TL Management, Grand Street Real Estate and Grand Street PL.

25.     At all times relevant herein, Messrs. Scheiner and Lichtschein and/or TL Management, acting through Grand Street Nursing or other entities owned and controlled by them, directed the Debtor's operations and caused the Debtor to make the transfers set forth herein.

## II.    The Real Property Was Transferred to Grand Street Real Estate and Grand Street PL.

26.     By way of Warranty Deed dated February 12, 2015 (the "Premises Deed"), WH Real Estate conveyed the Premises to Grand Street Real Estate.

27.     The Premises Deed was recorded on March 19, 2015 on the City of New Britain land records.

28.     The Premises Deed specifically stated that the Premises were conveyed subject to "taxes owing to the Town (*sic*) of New Britain, which taxes [Grand Street Real Estate] herein assumes and agrees to pay as part consideration for this deed…."

29.     By way of Warranty Deed dated February 12, 2015 (the "Parking Lot Deed"), the Debtor conveyed the Parking Lot to Grand Street PL.

30.     The Parking Lot Deed was recorded on March 19, 2015 on the City of New Britain land records.

31.     The Parking Lot Deed contains language identical to the Premises Deed: The Parking Lot was conveyed subject to "taxes owing to the Town (*sic*) of New Britain, which taxes [Grand Street PL] herein assumes and agrees to pay as part consideration for this deed…."

**III.    The Fraudulent Transfers Were Made to the City for the Benefit of Scheiner, Lichtschein, Grand Street Real Estate, and Grand Street PL.**

32.     Notwithstanding the fact that the Debtor was not the owner of the Premises or the Parking Lot, and had no legal obligation to pay real estate taxes concerning either property, as evidenced by the aforementioned language in the Premises Deed and the Parking Lot Deed, the Debtor made the following transfers to the City of New Britain for taxes related to the Premises and the Parking Lot between August 2015 and December 2015:

|   | Transfer Date | Amount of Transfer from Debtor |
|---|---|---|
| 1 | 08/03/15 | $ 35,700.71 |
| 2 | 08/03/15 | $ 70,407.61 |
| 3 | 08/26/15 | $ 65,707.47 |
| 4 | 12/29/15 | $ 70,407.61 |
| | **TOTAL:** | **$ 242,223.40** |

(collectively, the "Fraudulent Transfers").

**IV.    The Debtor Was Insolvent at the Time of the Fraudulent Transfers.**

33.     The failure of the Debtor to pay its debts as they came due during this time was evidenced by, *inter alia*, the following:

a. A review of the tax returns filed on behalf of WH Holdings, which owns 100% of the stock of the Debtor, revealed that the Debtor had a negative net worth as of December 31, 2012;

b. Rosemarie Clark, the temporary administrator appointed by the State of Connecticut in 2012, testified at her Rule 2004 examination that soon after she started working at the Debtor in the fall of 2012, she had to negotiate payments with various creditors to ensure that the facility continued to operate and provide services to its patients;

c. Tax returns prepared, but not filed, for WH Holdings indicate that the Debtor's net worth had decreased as of December 31, 2013;

d. On August 21, 2014, TD Bank filed a foreclosure action against the Debtor, Walnut Hill Real Estate LLC, WH Holdings, Dr. Griggs, and

WHMC, Case No. HHB-CV-14-6026483, claiming that payments had not been made on two promissory notes totaling approximately $9,000,000;

e.  Various collection actions were filed in 2013 and 2014 by persons and entities who had provided goods and/or services to the Debtor;

f.  The State of Connecticut issued a tax warrant in the amount of about $124,000.00 for failure to pay withholding taxes from June 30, 2014 to March 31, 2015;

g.  A tax statement from the City of New Britain for three years of delinquent personal property taxes owed by the Debtor indicated that the taxes had not been paid for the years 2011, 2012, and 2013;

h.  A water/sewer lien in the amount of approximately $27,000 was recorded on the City of New Britain land records for 55 Grand Street, New Britain, CT on April 30, 2014; and

i.  Numerous checks issued by the Debtor were returned for insufficient funds between March 2013 and December 2014.

j.  As of February 2015, the Debtor had been sued by multiple vendors, and almost every vendor was threatening legal proceedings against the Debtor.

34.    In fact, the Debtor had been in a distressed financial condition since as early as 2012 and continued to have financial difficulties until it filed for Chapter 7 bankruptcy protection.

35.    In short, the Debtor was insolvent and was no longer able to pay its debts as they came due on the dates that each of the subject fraudulent transfers were made.

## COUNT ONE
## INTENTIONAL FRAUDULENT TRANSFER
## 11 U.S.C. §§ 548(a)(1)(A), 550 AND 551

36.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

37.    The Fraudulent Transfers were made to or for the benefit of the Defendants.

38.    The Fraudulent Transfers were made by the Debtor with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and future creditors.

39.     The Fraudulent Transfers constitute fraudulent transfers avoidable by the Trustee

pursuant to § 548(a)(1)(A) of the Bankruptcy Code and are recoverable from the Defendants

pursuant to § 550(a) of the Bankruptcy Code.

40.     As a result of the foregoing, pursuant to §§ 548(a)(1)(A), 550(a), and 551 of the

Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the

Fraudulent Transfers; (b) directing that the Fraudulent Transfers be set aside; (c) recovering the

Fraudulent Transfers, or the value thereof, from the Defendants for the benefit of the Debtor's

Estate; and (d) an injunction against the Defendants prohibiting them from further disposing of

the property transferred.

## COUNT TWO
## CONSTRUCTIVE FRAUDULENT TRANSFER
## U.S.C. §§ 548(a)(1)(B), 550 AND 551

41.     The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

42.     The Fraudulent Transfers were made on or within two (2) years of the Petition

Date.

43.     The Debtor did not receive reasonably equivalent value in exchange for the

Fraudulent Transfers.

44.     At the time of the Fraudulent Transfers, the Debtor was insolvent, or became

insolvent as a result of the Fraudulent Transfers.

45.     At the time of the Fraudulent Transfers, the Debtor was engaged in a business or a

transaction, or was about to engage in a business or a transaction, for which any property

remaining with the Debtor was an unreasonably small capital.

46.     At the time of the Fraudulent Transfers, the Debtor intended to incur, or believed

that it would incur, debts that would be beyond its ability to pay as such debts matured.

47.    The Fraudulent Transfers constitute constructively fraudulent transfers avoidable by the Trustee pursuant to §§ 548(a)(1)(B) and 551 of the Bankruptcy Code and are recoverable from the Defendants pursuant to § 550(a) of the Bankruptcy Code.

48.    As a result of the foregoing, pursuant to §§ 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Fraudulent Transfers; (b) directing that the Fraudulent Transfers be set aside; and (c) recovering the Fraudulent Transfers, or the value of thereof, from the Defendants for the benefit of the Debtor's Estate, and (d) an injunction against the Defendants prohibiting them from further disposing of the property transferred.

## COUNT THREE
## CUFTA INTENTIONAL FRAUDULENT TRANSFER
## 11 U.S.C. §§ 544(b)(1), 550(a) AND 551 AND
## CONN. GEN. STAT. §§ 52-552e(a)(1) AND 52-552h(a)

49.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

50.    The Fraudulent Transfers were made on or within four (4) years of the Petition Date.

51.    The Fraudulent Transfers were made with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and future creditors.

52.    The Fraudulent Transfers constituted fraudulent transfers within the meaning of, and in violation of, the Connecticut Uniform Fraudulent Transfer Act ("CUFTA"), Conn. Gen. Stat. § 52-552e(a)(1).

53.    As a direct and proximate result of the Fraudulent Transfers, the Debtor, its Estate, and its creditors have been caused to suffer money damages.

54.     At all times relevant herein, there have been creditors who have held and still hold matured or unmatured unsecured claims against the Debtor that were and are allowable under § 502 of the Bankruptcy Code or that were and are not allowable only under § 502(e).

55.     As a result of the foregoing, the Trustee is entitled to a judgment: (a) avoiding and preserving the Fraudulent Transfers; (b) directing that the Fraudulent Transfers be set aside; (c) recovering the Fraudulent Transfers, or the value thereof, pursuant to 11 U.S.C. §§ 550 and 551 and Conn. Gen. Stat. § 52-552h(a), from the Defendants for the benefit of the Debtor's Estate; and (d) an injunction against the Defendants prohibiting them from further disposing of the transferred property.

## COUNT FOUR
## CUFTA CONSTRUCTIVE FRAUDULENT TRANSFER
## CONN. GEN. STAT. §§ 52-552e(a)(2) AND 52-552f(a)

56.     The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

57.     The Fraudulent Transfers were made on or within four (4) years of the Petition Date.

58.     The Debtor did not receive reasonably equivalent value in exchange for the Fraudulent Transfers.

59.     At the time of the Fraudulent Transfers, the Debtor was insolvent, or became insolvent, as a result of the Fraudulent Transfers.

60.     At the time of the Fraudulent Transfers, the Debtor was engaged, or was about to engage, in a business or transaction, for which any property remaining with the Debtor was unreasonably small capital.

61.     At the time of the Fraudulent Transfers, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

62.     The Fraudulent Transfers constitute a fraudulent transfer within the meaning of, and in violation of, CUFTA, Conn. Gen. Stat. §§ 52-552e(a)(2) and/or 52-552f(a).

63.     As a direct and proximate result of the Fraudulent Transfers, the Debtor, its Estate, and its creditors have been caused to suffer money damages.

64.     As a result of the foregoing, the Trustee is entitled to a judgment: (a) avoiding and preserving the Fraudulent Transfers; (b) directing that the Fraudulent Transfers be set aside; (c) recovering the Fraudulent Transfers, or the value of thereof, from the Defendants for the benefit of the Debtor's Estate pursuant to 11 U.S.C. §§ 550 and 551 and state law; and (d) an injunction against the Defendants prohibiting them from further disposing of the property transferred.

## COUNT FIVE
## CIVIL CONSPIRACY
## (SCHEINER, LICHTSCHEIN, TL MANAGEMENT, GRAND STREET REAL ESTATE, <u>and GRAND STREET PL</u>)

65.     Scheiner and Lichtschein personally committed, participated in, or directed the commission of the acts of TL Management, Grand Street Nursing, Grand Street Real Estate and Grand Street PL that are alleged herein.

66.     At all times relevant herein, Scheiner and Lichtschein maintained complete domination of the finances, policy, and business practices of TL Management, Grand Street Nursing, Grand Street Real Estate and Grand Street PL in all respects, including the transactions that are the subject of this Complaint, such that TL Management, Grand Street Nursing, Grand Street Real Estate and Grand Street PL had no separate mind, will, or existence of their own.

67.    Scheiner and Lichtschein maintained and used such control to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or to commit a dishonest or unjust act in contravention of the Debtor's legal rights.

68.    Scheiner's and Lichtschein's aforesaid control of TL Management, Grand Street Nursing, Grand Street Real Estate and Grand Street PL proximately caused the injuries and unjust losses sustained by the Debtor, as alleged in this Complaint.

69.    At all times relevant herein, there was such a unity of interest and ownership between Scheiner, Lichtschein, TL Management, Grand Street Nursing, Grand Street Real Estate, and Grand Street PL that the independence of those entities had in effect ceased or had never begun.

70.    An adherence to the fiction that Grand Street Real Estate and Grand Street PL were entities with an identity separate and apart from Scheiner and Lichtschein would serve only to defeat justice and equity by permitting Scheiner and Lichtschein to escape liability arising out of the operations of TL Management, Grand Street Nursing, Grand Street Real Estate and Grand Street PL for the benefit of Scheiner and Lichtschein.

71.    Scheiner, Lichtschein, TL Management, Grand Street Real Estate, and Grand Street PL conspired and agreed to work together to systematically siphon the Debtor's property for no consideration by way of a series of unlawful acts and/or lawful acts undertaken by unlawful means.

72.    By virtue of causing or allowing the Debtor to pay the debts of Grand Street Real Estate and Grand Street PL, and by virtue of causing and/or accepting benefits of the Fraudulent Transfers, each of the aforementioned conspirators committed at least one act in furtherance of

12

their conspiracy to systematically siphon the Debtor's property for the benefit of themselves or a third party.

73.     The Debtor has incurred damages as a result of the civil conspiracy between and among Scheiner, Lichtschein, TL Management, Grand Street Real Estate, and Grand Street PL in an amount to be proven at trial.

## COUNT SIX
## UNJUST ENRICHMENT
## (SCHEINER, LICHTSCHEIN, TL MANAGEMENT,
## GRAND STREET PL, and GRAND STREET REAL ESTATE)

74.     The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

75.     The Fraudulent Transfers constitute the payment of property tax obligations of Grand Street Real Estate and Grand Street PL.

76.     Scheiner, Lichtschein, TL Management, Grand Street Real Estate and Grand Street PL received a substantial financial benefit from the Fraudulent Transfers for which they unjustly did not pay or render services or otherwise provide consideration to the Debtor to justify such transfers.

77.     The failure of Scheiner, Lichtschein, TL Management, Grand Street PL and Grand Street Real Estate to pay for or otherwise provide consideration to the Debtor for the Fraudulent Transfers and for the benefits conferred upon them was to the detriment of the Debtor, its Estate, and its creditors.

78.     It is contrary to equity and good conscience for Scheiner, Lichtschein, TL Management, Grand Street Real Estate and Grand Street PL to retain such benefits.

79.     As a result of the foregoing, the Debtor, its estate, and its creditors have been injured.

## STATEMENT CONCERNING ENTRY OF FINAL ORDERS OR JUDGMENT

Pursuant to Fed. R. Bankr. P. 7008, Bonnie Mangan, Chapter 7 Trustee of Walnut Hill Inc., hereby consents to entry of final orders or judgment by the Bankruptcy Court.

**WHEREFORE**, the Trustee, Bonnie C. Mangan, respectfully requests that the Court enter judgment in favor of the Trustee and against the Defendants as follows:

1. Pursuant to 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), 550(a), 551 and CUFTA: (a) avoidance of all transfers set forth above; (b) an order directing that the transfers set forth above be set aside; and (c) recovery of the transfers set forth above, or the value thereof, from the Defendants for the benefit of the estate of the Debtor;

2. A permanent injunction precluding the Defendants from transferring or disposing of any assets during the pendency of this bankruptcy case;

3. Disallowance of any claims held by the Defendants and/or their assignees against the Debtor and/or the Estate until the Defendants and/or their assignees satisfy the judgment;

4. Money damages;

5. Pre-judgment interest pursuant to Conn. Gen. Stat. § 37-3a;

6. Costs; and

7. Such other and further relief as this Court deems just and equitable.

Dated at Milford, Connecticut this 14th day of June, 2018.

THE TRUSTEE,
BONNIE C. MANGAN

By:*/s/ Lawrence S. Grossman*
    Lawrence S. Grossman [ct15790]
    Joanna M. Kornafel [ct29199]
    HURWITZ, SAGARIN, SLOSSBERG & KNUFF, LLC
    147 North Broad Street
    Milford, CT 06460
    Tel: 203-877-8000/Fax: 203-878-9800
    LGrossman@hssklaw.com
    JKornafel@hssklaw.com